UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | No. **08CR 481** |
| v. | ) ) | |
| | ) | Violation: Title 18, United States Code, |
| JEFF TROCHOWSKI and | ) | Section 1343 |
| GREG SARWA | ) ) | **JUDGE SHADUR** |

The UNITED STATES ATTORNEY charges: **MAGISTRATE JUDGE ASHMAN**

1. At times material to this information:

   a. Defendant JEFF TROCHOWSKI was the sole owner and principal loan officer of Lakeshore Financial Corporation, a licensed Illinois Mortgage Brokerage.

   b. Defendant GREG SARWA owned and operated PGN, Inc. ("PGN") and Kee Builders, Inc., two Illinois corporations through which he owned property, including 3256 W. Polk Street; 3101 W. Lexington Street; and 6218 S. King Drive in Chicago, Illinois.

   c. Countrywide Home Loans, Inc. ("Countrywide"), Delta Funding Corporation ("Delta"), Option One Mortgage Corporation ("Option One"), and Comcor Mortgage Corporation ("Comcor") were residential mortgage lenders.

   d. First Tennessee Bank was a financial institution, the deposits of which were insured by the Federal Deposit Insurance Corporation.

   e. Integrity Title, Inc. ("Integrity") was a title company located in Des Plaines, Illinois.

**FILED**

JUN 1 8 2008 TC

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

1

2. Beginning no later than in or about May 2000 and continuing through in or about March 2003, at Chicago and Des Plaines, in the Northern District of Illinois, Eastern Division, and elsewhere,

JEFF TROCHOWSKI and
GREG SARWA,

defendants herein, together with persons known to the U.S. Attorney, knowingly devised, intended to devise, and participated in a scheme to defraud lenders, and to obtain money by means of materially false and fraudulent pretenses, and representations, which scheme affected financial institutions, as further described below.

3. It was part of the scheme that defendant GREG SARWA transferred property to nominees and defendants JEFF TROCHOWSKI and SARWA fraudulently obtained loans secured by the property which were in excess of the value of the property by making materially false representations to the lenders concerning the nominees and the value of the property.

4. It was further part of the scheme that defendant GREG SARWA fraudulently obtained a total of approximately $757,500 in loan proceeds, including approximately $23,145 in broker fees paid to defendant JEFF TROCHOWSKI.

### 3256 West Polk Street, Chicago, Illinois ("the Polk Property")

5. It was further part of the scheme that defendant GREG SARWA falsely represented on loan applications to lenders that condominium Units 100A through D were located in the basement at the Polk Property, defendant SARWA well knowing that Units 100A though D did not exist, as the basement in the Polk Property had neither plumbing nor interior walls separating the area into units.

## Polk Property, Unit 100A

6. It was further part of the scheme that, on or about January 5, 2002, defendant GREG SARWA executed a Quit Claim Deed from PGN granting Nominee A ownership of Unit 100A in the Polk Property ("Unit 100A").

7. It was further part of the scheme that, on or about January 7, 2003, defendants JEFF TROCHOWSKI and GREG SARWA submitted to Option One an application in the name of Nominee A for a $140,000 loan secured by Unit 100A in which defendants TROCHOWSKI and SARWA inflated Nominee A's monthly base employment income and the monthly rental income from Unit 100A, defendants TROCHOWSKI and SARWA well knowing that these representations were false and that Option One would rely on the false representations in evaluating the loan application.

8. It was further part of the scheme that defendants JEFF TROCHOWSKI and GREG SARWA submitted to Option One an appraisal which falsely represented that the value of Unit 100A was $172,000, when Unit 100A did not exist, defendants TROCHOWSKI and SARWA well knowing that the appraisal was false and that Option One would rely on the false appraisal in evaluating the loan application and determining the amount of the loan.

9. It was further part of the scheme that, on or about January 28, 2003, defendants JEFF TROCHOWSKI and GREG SARWA fraudulently caused Option One to approve and fund a loan in the amount of approximately $138,000, which was purportedly secured by Unit 100A.

## Polk Property, Unit 100B

10. It was further part of the scheme that, on or about January 5, 2002, defendant GREG SARWA executed a Quit Claim Deed from PGN granting Nominee A ownership of Unit 100B in

3

the Polk Property ("Unit 100B").

11. It was further part of the scheme that, on or about February 25, 2003, defendants JEFF TROCHOWSKI and GREG SARWA submitted to Delta an application in the name of Nominee A for a $111,800 loan secured by Unit 100B in which defendants TROCHOWSKI and SARWA inflated Nominee A's gross monthly income, defendants TROCHOWSKI and SARWA well knowing that this representation was false and that Delta would rely on the false representations in evaluating the loan application.

12. It was further part of the scheme that defendants JEFF TROCHOWSKI and GREG SARWA submitted to Delta an appraisal which falsely represented that the value of Unit 100B was $172,000, when Unit 100B did not exist, defendants TROCHOWSKI and SARWA well knowing that the appraisal was false and that Delta would rely on the false appraisal in evaluating the loan application and determining the amount of the loan.

13. It was further part of the scheme that, on or about March 3, 2003, defendants JEFF TROCHOWSKI and GREG SARWA fraudulently caused Delta to approve and fund a loan in the amount of approximately $112,000, which was purportedly secured by Unit 100B.

### Polk Property, Unit 100C

14. It was further part of the scheme that, on or about January 5, 2002, defendant GREG SARWA executed a Quit Claim Deed from PGN granting Nominee B ownership of Unit 100C in the Polk Property ("Unit 100C").

15. It was further part of the scheme that, on or about January 2, 2003, defendants JEFF TROCHOWSKI and GREG SARWA submitted to Option One an application in the name of Nominee B for a $134,000 loan secured by Unit 100C in which defendants TROCHOWSKI and

SARWA inflated Nominee B's monthly base employment income and the monthly rental income of Unit 100C, defendants TROCHOWSKI and SARWA well knowing that these representations were false and that Option One would rely on the false representations in evaluating the loan application.

16. It was further part of the scheme that defendants JEFF TROCHOWSKI and GREG SARWA submitted to Option One an appraisal which falsely represented that the value of Unit 100C was $172,000, when Unit 100C did not exist, defendants TROCHOWSKI and SARWA well knowing that the appraisal was false and that Option One would rely on the false appraisal in evaluating the loan application and determining the amount of the loan.

17. It was further part of the scheme that, on or about January 31, 2003, defendants JEFF TROCHOWSKI and GREG SARWA fraudulently caused Option One to approve and fund a loan in the amount of approximately $137,000, which was purportedly secured by Unit 100C.

### Polk Property, Unit 100D

18. It was further part of the scheme that, on or about January 5, 2002, defendant GREG SARWA executed a Quit Claim Deed from PGN granting Nominee A ownership of Unit 100D in the Polk Property ("Unit 100D").

19. It was further part of the scheme that, on or about November 27, 2002, defendants JEFF TROCHOWSKI and GREG SARWA submitted to Countrywide an application in the name of Nominee A for a $106,500 loan secured by Unit 100D in which defendants TROCHOWSKI and SARWA inflated Nominee A's assets and misrepresented Nominee A's residence as Unit 100D, defendants TROCHOWSKI and SARWA well knowing that these representations were false and that Countrywide would rely on the false representations in evaluating the loan application.

20. It was further part of the scheme that defendants JEFF TROCHOWSKI and GREG SARWA submitted to Countrywide an appraisal which falsely represented that the value of Unit 100D was $195,000, when Unit 100D did not exist, defendants TROCHOWSKI and SARWA well knowing that the appraisal was false and that Countrywide would rely on the false appraisal in evaluating the loan application and determining the amount of the loan.

21. It was further part of the scheme that, on or about December 31, 2002, defendants JEFF TROCHOWSKI and GREG SARWA fraudulently caused Countrywide to approve and fund a loan in the amount of approximately $106,500, to close the loan purportedly secured by Unit 100D.

### 3101 W. Lexington Street, Unit #1

22. It was further part of the scheme that, on or about May 15, 2000, defendant SARWA executed a Warranty Deed from PGN granting Nominee A ownership of Unit #1 in 3101 W. Lexington Street ("Unit #1").

23. It was further part of the scheme that, on or about March 27, 2001, defendants JEFF TROCHOWSKI and GREG SARWA submitted to Comcor an application in the name of Nominee A for a $132,000 loan secured by Unit #1 in which defendants TROCHOWSKI and SARWA inflated Nominee A's monthly base employment income and assets, and falsely represented that Nominee A had received a $35,000 bonus from PGN and that Nominee A resided in Unit #1, defendants TROCHOWSKI and SARWA well knowing that these representations were false and that Comcor would rely on the false representations in evaluating the loan application.

24. It was further part of the scheme that defendants JEFF TROCHOWSKI and GREG SARWA submitted to Comcor an appraisal which falsely represented that the value of Unit #1 was $165,000, based upon certain improvements having been made to Unit #1, when, in fact, no such

improvements had been made, defendants TROCHOWSKI and SARWA well knowing that the appraisal was false and that Comcor would rely on the false appraisal in evaluating the loan application and determining the amount of the loan.

25. It was further part of the scheme that, on or about April 20, 2001, defendants JEFF TROCHOWSKI and GREG SARWA caused Comcor to approve and fund a loan in the amount of approximately $132,000, which funds were used by Integrity Title to close the loan secured by Unit#1, which loan was simultaneously sold and assigned to First Tennessee Bank at the closing.

### 6218 S. King Drive, Unit B

26. It was further part of the scheme that, on May 16, 2001, defendant GREG SARWA executed a Quit Claim Deed from PGN granting Nominee C ownership of Unit B in 6218 S. King Drive ("Unit B").

27. It was further part of the scheme that, on or about April 27, 2001, defendants JEFF TROCHOWSKI and GREG SARWA submitted to Comcor an application in the name of Nominee C for $132,000 secured by Unit B in which defendants JEFF TROCHOWSKI and GREG SARWA inflated Nominee C's monthly base employment income and assets owned, and false represented that Nominee C had received a $28,000 bonus from PGN and that Nominee C resided in Unit B, defendants TROCHOWSKI and SARWA well knowing that these representations were false and that Comcor would rely on the false representations in evaluating the loan application.

28. It was further part of the scheme that defendants JEFF TROCHOWSKI and GREG SARWA submitted to Comcor an appraisal which falsely represented that the value of Unit B was $176,000, based upon certain improvements having been made to Unit B, when, in fact, no such improvements had been made, defendants TROCHOWSKI and SARWA well knowing that the

appraisal was false and that Comcor would rely on the false appraisal in evaluating the loan application and determining the amount of the loan.

29. It was further part of the scheme that, on or about May 29, 2001, defendants JEFF TROCHOWSKI and GREG SARWA caused Comcor to approve and fund a loan in the amount of approximately $132,000, which funds were used by Integrity Title to close the loan secured by Unit B, which loan was simultaneously sold and assigned to First Tennessee Bank at the closing.

30. It was further part of the scheme to defraud that the defendants JEFF TROCHOWSKI and GREG SARWA misrepresented, concealed, hid and caused to be misrepresented the purpose of and acts in furtherance of this fraud scheme.

31. On or about January 28, 2003, in the Northern District of Illinois, Eastern Division,

JEFF TROCHOWSKI and
GREG SARWA,

defendants herein, for the purpose of executing and attempting to execute the scheme, knowingly caused to be transmitted by means of a wire communication in interstate commerce from Option One's account at Mellon Bank in Pittsburgh, Pennsylvania to Integrity Title's account at First Midwest Bank in Joliet, Illinois, an authorization for a monetary wire transfer in the amount of $138,135.88, which funds transfer represented the proceeds of a loan made to Nominee A and was secured by the condominium purportedly located at 3256 West Polk Street, Unit 100A, Chicago, Illinois.

In violation of Title 18, United States Code, Section 1343.

## FORFEITURE ALLEGATION

The UNITED STATES ATTORNEY further charges:

1. The allegations contained in Count One of this Information are realleged and incorporated herein by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

2. As a result of their violation of Title 18, United States Code, Section 1343, as alleged in the foregoing Information,

> JEFF TROCHOWSKI and
> GREG SARWA,

defendants herein, shall forfeit to the United States, pursuant to Title 18, United States Code, Section, 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any and all right, title and interest in property, real and personal, which constitutes and is derived from proceeds traceable to the charged offense.

3. The interests of the defendants JEFF TROCHOWSKI and GREG SARWA subject to forfeiture pursuant to Title 18, United States Code, Section, 981(a)(1)(C) and Title 28, United States Code, Section 2461(c) include but are not limited to $713,668.

4. If any of the property subject to forfeiture and described above, as a result of any act or omission of the defendants JEFF TROCHOWSKI and GREG SARWA:

    (a) Cannot be located upon the exercise of due diligence;

    (b) Has been transferred or sold to, or deposited with, a third party;

    (c) Has been placed beyond the jurisdiction of the Court;

    (d) Has been substantially diminished in value; or

      (e)    Has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property under the provisions of Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

All pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

 

_____
UNITED STATES ATTORNEY